945 F.2d 398
 RICO Bus.Disp.Guide 7852
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
L. Nicholas STEVENS, Plaintiff-Appellant,
v.
Don C. HARROLD, Sr., Don C. Harrold, Jr., West Virginia
Coals, Incorporated, a West Virginia Corporation, Charles
Sorbello, Bellwood Mining Company, Incorporated, a West
Virginia Corporation, Defendants-Appellees.
 No. 90-1078.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1991.
Decided Sept. 27, 1991.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. William M. Kidd, Senior District Judge. (CA-89-25-C-K)
 Argued: James A. McLaughlin, Fairmont, W.V., for appellant; Gerard Ray Stowers, Bowles, Rice, McDavid, Graff & Love, Charleston, W.V., for appellees Don Harrold, Sr., Don Harrold, Jr., and West Virginia Coals; Herbert George Underwood, Steptoe & Johnson, Clarksburg, W.V., for appellees Sorbello and Bellwood Mining.
 On Brief: R. Joseph Zak, Law Offices of R. Joseph Zak, Charleston, W.V., for appellant; Charles M. Love, III, Benjamin L. Bailey, Bowles, Rice, McDavid, Graff & Love, Charleston, W.V., for appellees Don Harrold, Sr., Don Harrold, Jr., and West Virginia Coals.
 N.D.W.Va.
 AFFIRMED.
 Before BUTZNER and CHAPMAN, Senior Circuit Judges, and GRAHAM CALDER MULLEN, United States District Judge for the Western District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 L. Nicholas Stevens appeals the district court's order dismissing his action brought under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1964(c), and his pendent state law claim. We affirm the district court's judgment dismissing the complaint for failure to state a claim, because Stevens failed to plead a sufficient causal relation between the alleged predicate racketeering acts and his alleged injuries. We also affirm dismissal of the pendent claim.
 
 
 2
 * Because the district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), we take the facts in Steven's amended complaint in the light most favorable to him. From 1973 until 1985, Stevens was an employee, officer, and director of West Virginia Coals, Inc., which Don C. Harrold, Sr., and Don C. Harrold, Jr., owned. In 1979, Stevens and the Harrolds agreed to buy an AM radio station using a loan guaranteed by the Small Business Administration (SBA). The SBA guaranteed the loan because the Harrolds and Stevens misrepresented that Stevens's wife owned 70% of the station. In fact, Stevens owned 50% and the Harrolds jointly owned 50%. Stevens and the Harrolds agreed that once the station became profitable, they would refinance the operation and change the corporate documents to reflect the actual ownership interests. The station never became profitable, and in 1981 the Harrolds used their financial position to coerce Stevens's wife into selling the station for $150,000. At that time Stevens had informed the Harrolds of a $380,000 offer from James Dumire. The Harrolds' buyer later resold the station to Dumire for $400,000. Stevens owed the Harrolds $190,000 on demand notes resulting from this venture.
 
 
 3
 In 1982, Peora Coal Company, which Stevens formed at the Harrold's behest, purchased the Williams Mine. The Harrolds provided all $200,000 of the capital and took security interests in all assets and property. The Harrolds structured the transaction in this way to shield themselves from liability for environmental and other violations by the Williams Mine. Stevens agreed to this transaction because of the debt he owed them from the Alleghany Broadcasting venture. Stevens borrowed additional capital from the Harrolds until 1984, when he brought the mine into substantial compliance with applicable laws and began producing coal. The Harrolds caused 10,000 tons of coal stockpiled at the mine to be transported by Charles Sorbello and sold to Atlantic Electric Company. The proceeds of these sales went directly to the Harrolds. In 1985, the Harrolds, using authorizations Stevens had unwittingly signed when he bought the Williams Mine, sold the mine to Charles Sorbello or his corporate persona, Bellwood Mining Co. All proceeds from this sale went to the Harrolds. As a result of this transaction, Stevens received no cash, but he incurred $80,000 in tax liabilities and additional debts to the Harrolds and others.
 
 
 4
 In 1983, Stevens acquired Salt Lick Coals, Inc., which was then in Chapter 11 Bankruptcy protection. The Harrolds provided the capital for this venture because they wanted to avoid liability on reclamation bonds they previously had furnished for Salt Lick Coals. They again structured the transaction to shield themselves from further liability. Sorbello also provided capital under an agreement that Salt Lick Coals eventually would sell its equipment to Bellwood Mining at below-market prices. This sale never occurred. As Stevens was finishing the reclamation efforts, he ran into a vein of unmarketable high sulphur coal. Stevens then proposed using Salt Lick Coals's equipment in the Williams Mine, thereby producing revenue for both mines. The Harrolds and Sorbello, however, prohibited him from doing so, and Salt Lick Coals went into a Chapter 7 Bankruptcy liquidation. This failure increased Stevens's indebtedness to the Harrolds.
 
 
 5
 Alleging predicate acts of mail and wire fraud, Stevens brought his RICO claims against the Harrolds, West Virginia Coals, Sorbello, and Bellwood Mining. Stevens alleged that the defendants made numerous, largely unspecified, mailings and interstate telephone calls as a part of these transactions. He also alleged as a predicate act an interstate shipment of allegedly stolen coal.
 
 II
 
 6
 Section 1964(c) of Title 18 U.S.C. requires a plaintiff to show that he has been injured in his business or property by reason of a violation of § 1962. In Brandenburg v. Seidel, 859 F.2d 1179 (4th Cir.1988), we held that this provision of § 1964 "requires the plaintiff to make two closely related showings: (1) that he has suffered injury to his business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962." 859 F.2d at 1187.
 
 
 7
 The district court properly concluded that Stevens's amended complaint failed to satisfy the requirements set forth in Brandenburg. Stevens's vague, unspecified allegations of mail and wire fraud suggest that defendants may have defrauded the SBA, the bankruptcy court, and regulatory agencies but fail to show how these predicate acts caused Stevens's injuries. His amended complaint discloses that his losses were caused by the failure of the business ventures he undertook with the Harrolds and Sorbello. In the sale of the Williams Mine to Sorbello, Stevens does not allege that the sale price was below market, but that he incurred tax liabilities while receiving no proceeds. Likewise, Stevens does not allege that anyone fraudulently induced him to sign the authorizations allowing the Harrolds to sell the mine, but that he simply did not understand the documents he signed. Stevens lost money in the venture because the mine did not produce as planned and thus the sale price was insufficient to repay his debt. He makes no allegations about how he was injured by the sale of the stockpiled coal.
 
 
 8
 Finally, Stevens alleges that the failure to use the Salt Lick equipment in the Williams Mine caused Salt Lick to enter Chapter 7 proceedings. He alleges no misrepresentation by the Harrolds or Sorbello in this matter. The proximate cause of Stevens's losses in the Salt Lick Mine venture is abundantly clear--high sulphur coal.
 
 
 9
 Because the district court dismissed the counts of the complaint alleging violation of RICO, the court also properly dismissed the pendent state law claims. United Mine Workers v. Gibbs, 383 U.S. 715 (1966).
 
 
 10
 AFFIRMED.